MENASHA WOODEN WARE COMPANY v. HUDGINS PRODUCE COMPANY.

Opinion delivered November 24, 1913.

SALE OF CHATTELS—QUALITY OF ARTICLES SOLD—WAIVER OF OBJECTIONS.— Where appellee purchased goods from appellant and, after receiving and examining and accepting them, promised to pay the full purchase price, although complaining of their inferior quality, he will be held to have waived any objection to their quality, and to be liable to appellant for the full purchase price.

Appeal from Miller Circuit Court; *Jacob M. Carter*, Judge; reversed.

*Pratt P. Bacon,* for appellant.

The letter of May 20, the account having been rendered, and appellee, having full knowledge of the facts and circumstances, having made payment of $378.85, made request for further time and promised to pay at the expiration thereof, and appellant having accepted the same, constitutes an account stated; and after the dispute arose, the letter of June 17 constituted a contract of compromise and settlement.   Appellee's claim for breach of implied warranty was barred, and the court erred in admitting testimony as to the condition of the cooperage, etc.   88 Ark. 371; 75 Ark. 271; 99 Ark. 593; 43 Ark. 172; 101 Ark. 344; 74 Ark. 270; 110 Ill. 107; 14

Ky. Law Rep. 863; 107 Mich. 41; 64 N. W. 872; 163 Mo. 442, 63 S. W. 812; 21 Ark. 357; 46 Ark. 217; 62 Ark. 621; *Id.* 342; 95 Ark. 94; 80 Ark. 438; 36 S. E. 437; 72 Ia. 184; 11 S. D. 167, 76 N. W. 311; 83 Kan. 590; 55 Ark. 155.

*Simms & Cella,* for appellee.

The authorities relied on by appellant recognize the principle that in the *absence of fraud or mistake,* settlements, compromises, account stated, etc., will stand. In this cause, appellee's defense is that the letters which appellant claims stated the account and settled the controversy were written by appellee without knowledge of the extent of the defective condition of the cooperage, etc. This was a question of fact for the jury, and its finding in appellee's favor under sharply conflicting testimony ought not to be disturbed. 95 Ark. 492, 493; 22 Ark. 454; 53 Ark. 155; 72 Ark. 343; 81 Ark. 549.

HART, J. Appellant sued appellee for $600 alleged to be balance due on a carload of cooperage sold by the former to the latter. There was a trial before a jury, which resulted in a verdict for appellee for $378.75, and the case is here on appeal.

Appellant was a manufacturer of cooperage in the State of Wisconsin, and sent to appellee, at Texarkana, Arkansas, samples of cooperage it proposed to furnish. Appellee tested the samples, and, on the 7th day of April, 1911, gave appellant an order for a car of ten and fifteen gallon kegs for use in the shipment of cider, and agreed to pay therefor $978.85. The carload of cooperage was received by appellee on April 18, 1911. On May 20, following, appellee wrote appellant, enclosing a check for $378.85, to be applied in payment of the cooperage. The letter stated that appellee was short of funds, but would send another check on the 25th for $300 and another for the balance on June 1. The letter also stated that the kegs were a disappointment to appellee because they were built so light that they would not hold cider; that the tops, as well as the bung staves, swelled and caused a leak, and in shipping any distance they would not stand

the hard handling to which they were subject in transit. Appellee failed to make the additional payments promised in this letter, and appellant drew a draft on it for the amount. On June 17, 1911, appellee wrote appellant as follows:

"Texarkana, Arkansas, June 17, 1911.

"Menasha W. W. Co., Menasha, Wis.

"Gentlemen: We regret to advise that we are not able to take care of draft which you drew on us, and we are today having bank return same to you. We are a little hard pressed at this time on account of four carloads of produce which came in on us this week. We are going to ask a special favor that you give us a little bit more time on this and will let you have check not later than the 29th.

"We wish to state that we are having no end of trouble with the cooperage which you have sent us, and it is working quite a hardship on us to have to pay for something which we can not use in our business. While we were corresponding with you we wrote you that we wanted a cider keg, and, being new in the business, depended upon you to sell us something that would hold cider. We not only have on our hands a car of cooperage which will not hold cider, but added to this misfortune, we are having to make good the cider which we are getting out in your kegs and are also losing customers on account of bad cooperage. We can put up a keg of cider and let it stand for twenty-four hours and the heads begin to warp and spring a-leak. We have filled these kegs with water to test them and find that water acts on them just the same as cider does. We are not going to complain because we got the worst of this deal, but we are going to ask you not to press us for payment before the time stated above. Under these circumstances we believe that you will grant us this favor. Thanking you for your indulgence, we are,

"Yours truly,

"Hudgins Produce Company."

Evidence was introduced by appellant tending to show that the sample kegs were made of maple and birch, paraffin lined on the inside and stained on the outside, and that the carload shipped to appellee was made of the same kind of wood and was lined and stained as the samples, and was exactly like the samples. On the other hand, appellee adduced evidence tending to show that none of the carload of kegs shipped to it were made like the samples, and that all of them leaked badly. The president of appellee company testified:

On May 20, when I sent the check, I knew we were having trouble with the kegs. When the letter of June 17 was written, I knew the condition of the kegs to my sorrow. I have not used any of them since then. We have used about half of the kegs. I probably used some of them in October, and might have used some in August, because we had run short of cooperage. Appellant granted the extension of time asked for in the letter of June 17.

In the case of *Smith* v. *New Albany Rail Mill Company,* 50 Ark. 31, the court held: ''The defendant having ordered iron rails from the plaintiff, second-class rails of inferior quality were sent to him, although in previous dealings he had instructed the plaintiff never to send him second-class rails. On being notified that the rails were inferior, the plaintiff replied that if they were bad not to receive them. But the defendant accepted and used the rails and afterward admitted his indebtedness for them at the price charged. In an action to recover the price, *held*, that the defendant was liable for the price charged; that evidence of the market value of the rails was properly excluded, and it was not error to refuse to instruct the jury that more than their market value could not be recovered.''

We think the principle there announced controls here. At the time appellee wrote the letters of May 20 and June 17, it knew as much about the alleged defects in the kegs as it ever did. This is admitted in the letters and afterward testified to by the president of appellee

company at the trial of the case.  Appellee accepted the cooperage with full knowledge of its defects, and expressly stated to appellant that it was not going to complain, but asked for an extension of the time of payment, which was granted by appellant.  These facts are uncontroverted.  Appellee paid a part of the purchase price with full knowledge of the alleged defects, and promised to pay the rest of the stipulated price in order to secure an extension of the time of payment which was granted to it.  Having thus acted with a full knowledge of all the facts and circumstances connected with the alleged defects in the carload of kegs, it will be deemed to have waived them.  It follows that the judgment must be reversed, and it appearing that the facts were fully developed at the trial in the court below under the undisputed evidence, judgment will be entered here for appellant in the sum of $600, the amount sued for.